UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BONNIE KOHLERITER, et al., | No. 2:25-cv-02446-DJC-JDP |
| Plaintiffs, | |
| v. | ORDER |
| UNITED STATES DEPARTMENT OF AGRICULTURE, et al., | |
| Defendants. | |

This action concerns the United States Forest Service's gather and removal of wild horses in the Devil's Garden Plateau Wild Horse Territory. Plaintiffs have sought an order enjoining Defendants' efforts to reduce the wild horse population in the Territory. The Court previously denied Plaintiffs' Motion for Temporary Restraining Order and set further briefing on Plaintiffs' Motion for Preliminary Injunction, which is presently before the Court.

The facts and legal argument have developed since the Court's prior order. Despite these developments, the result on Plaintiffs' Motion for Preliminary Injunction remains the same as it was on Plaintiffs' Motion for Temporary Restraining Order. It appears likely that Plaintiffs are correct that Defendants violated NEPA and thus have a likelihood of success on that claim. Nevertheless, at least on the current record,

Plaintiffs have not established that they will suffer irreparable harm in the absence of preliminary injunctive relief or that the balance of equities and public interest weighs in their favor. Thus, for these reasons and those detailed below, Plaintiffs' Motion for Preliminary Injunction (ECF No. 4) is denied.

## BACKGROUND

The Court's prior order provided details regarding the historical background of the Devil's Garden Plateau Wild Horse Territory and the wild horse population it contains. It also described the factual background surrounding the gather and removal specifically at issue in this case, which the Court need not repeat here.

Since the Court's order denying Plaintiffs' Motion for Temporary Restraining Order, Defendants have completed the gather. Defendants report that a total of 276 horses were gathered. Per Defendants' representations, six horses were euthanized due to pre-existing injuries. The gathered horses are being held pending the results of Defendants' aerial survey and the estimated horse population as determined by a statistician. The area survey was originally planned for October, but has been postponed due to the lapse in government funding.

Additionally, in the time since the Court's Order on the Motion for Temporary Restraining Order, Defendants issued a Finding of No Significant Impact ("FONSI") that adopted a new 2025 Territory Management Plan. The environmental impacts of that 2025 Plan are analyzed in the 2025 Environmental Assessment ("EA"). The 2025 Plan includes the "Middle Section" that the D.C. Circuit found was improperly excluded from the 2013 Plan and keeps the Appropriate Management Level ("AML") for the wild horses population in the Devil's Garden Plateau Wild Horse Territory between 206 and 402 horses.

Finally, during the intervening time between the hearing on the present motion and this Order, the federal government suffered a lapse in funding that is, at the time of this Order, affecting all federal agencies, including Defendants United States Department of Agriculture and United States Forest Service. At the request of the

Court, Defendants filed a status report in which they informed the Court that the planned October aerial survey would not occur until the lapse in funding ended. (ECF No. 20.) Plaintiffs filed a response to that status report. (ECF No. 22.)

## LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). To obtain preliminary injunctive relief, Plaintiff must show (1) likelihood of success on the merits; (2) likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of the equities tips in his favor; and (4) that an injunction is in the public interest. *Id.* at 20. A preliminary injunction may only be awarded "upon a clear showing" of evidence that supports each relevant preliminary injunction factor. *Id.* at 22. "This 'clear showing' requires factual support beyond the allegations of the complaint, but the evidence need not strictly comply with the Federal Rules of Evidence." *CI Games S.A. v. Destination Films*, No. 2:16-cv-05719-SVW-JC, 2016 WL 9185391, at *11 (C.D. Cal. Oct. 25, 2016).

Alternatively, courts in the Ninth Circuit apply a "sliding scale" approach, under which "[a] preliminary injunction is appropriate when a plaintiff demonstrates . . . that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor . . . so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134–35 (9th Cir. 2011) (quoting *Lands Council v. McNair*, 537 F.3d 981, 987 (9th Cir. 2008).) Serious questions are those "which cannot be resolved one way or the other at the hearing on the injunction." *Bernhardt v. Los Angeles County*, 339 F.3d 920, 926 (9th Cir. 2003) (quoting *Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1362 (9th Cir. 1988)).

////

////

////

## DISCUSSION

**I. Likelihood of Success on the Merits**

The Court's analysis regarding Plaintiffs' likelihood of success on the merits remains largely unchanged by any of the intervening factual developments or the additional legal argument provided by the parties. As detailed in the Court's prior order, it is clear that Defendants have proceeded for years without a valid NEPA document that addresses the removal of wild horses from the Devil's Garden Plateau Wild Horse Territory. Despite Defendants' continued contentions to the contrary, the 2013 Devil's Garden Plateau Wild Horse Territory Management Plan was at least partially vacated by the D.C. Circuit Court's 2017 order. Most importantly for purposes of this case, the 2013 Plan's AML was necessarily vacated by that order. Thus, at the time the gather began, there was not a valid NEPA document in place.[1] On these facts alone, Plaintiffs have a strong likelihood of success on their claim that Defendants violated NEPA.

In their Opposition, Defendants argue that their issuance of the 2025 EA cures this NEPA violation and moots Plaintiffs' claim. (Opp'n (ECF No. 14) at 10.) The Ninth Circuit has held repeatedly that to comply with NEPA, the requisite consideration must be conducted <u>before</u> resources are expended to take an action and that the issuance of a new NEPA document finding past actions to be permissible does not satisfy the procedural requirements of NEPA. *See N. Plains Res. Council, Inc. v. Surface Transp. Bd.*, 668 F.3d 1067, 1084 (9th Cir. 2011); *see also Ctr. for Env't Law and Policy v. U.S. Bureau of Reclamation*, 655 F.3d 1000, 1006 (9th Cir. 2011). Thus, the issuance of the 2025 EA does not change the Court's determination that Defendants were acting without a valid NEPA document at the time the gather and removal were planned and

---

[1] The Court noted in its Order Denying Plaintiffs' Motion for Temporary Restraining Order that older plan documents also do not appear valid. (ECF No. 12 at 8 n.4.) Neither party subsequently argued for the applicability of those documents.

executed. Thus, it appears that Defendants violated NEPA, and Plaintiffs have a likelihood of success on this claim.

The Court's decision regarding Plaintiffs' likelihood of success on their Wild Horse Act ("WHA") and First Amendment claims is also the same as in the prior order for the reasons described therein. Plaintiffs contend that Defendants' determination of overpopulation under the WHA was arbitrary and capricious based on the inaccuracies of the ground count and issues with prior aerial surveys. (Reply at 19-20.) However, Defendants have provided a reasonable accounting of how they reached their population determination. (*See* ECF No. 15-17; *see also* Levy Decl. (ECF No. 14-2) ¶¶ 13-15.) Plaintiffs take issue with the inconsistency between prior numbers that have been provided, but this appears attributable to the approximate nature of such counting efforts. Regardless of which of the population numbers is utilized, the estimated population exceeds all prior and present minimum AMLs. Given the clear and reasonable explanation provided for Defendants' overpopulation determination, and the lack of evidence clearly establishing the falsity of these numbers, Plaintiffs have not shown a likelihood of success on their WHA claim.[2]

Plaintiffs have also not established a likelihood of success on their First Amendment claim. As detailed in the Court's prior order, Defendants have identified constitutionally appropriate overriding interests in placing limitations on the availability of public viewing and have narrowly tailored the restrictions. (*See* ECF No. 12 at 9-10.) Plaintiffs' arguments to the contrary in their Reply do not alter this analysis. (*See* Reply at 22-23.)

---

[2] As discussed below, the Court also orders Defendants to provide the data from the aerial survey and notice prior to removal of the gathered horses. This will ensure that if the aerial survey reveals issues with the overpopulation determination, the Court and parties will have the opportunity to address it before any harm occurs.

5

**II. Irreparable Injury**

The Court's analysis also remains the same as to Plaintiffs' likelihood of irreparable injury. Plaintiffs have not established a likelihood of irreparable injury in connection with the present gather and removal.

Plaintiffs argue that irreparable harm can be presumed from Defendants' failure to comply with NEPA. It is true that in cases where a defendant violates NEPA and there is some environmental harm, preliminary injunctive relief is often warranted. *See W. Watershed Project v. Bernhardt*, 391 F. Supp. 3d 1002, 1022 (D. Or. 2019). Nevertheless, Plaintiffs must still establish that they will suffer irreparable harm in the absence of a preliminary injunction to obtain preliminary injunctive relief. The existence of an irreparable injury cannot simply be assumed by a violation of NEPA. *Cloud Found. v. U.S. Bureau of Land Mgmt.*, 802 F. Supp. 2d 1192, 1208 (D. Nev. 2011) ("*Winter* made clear that in order to obtain a preliminary injunction, the plaintiffs must show a likelihood of irreparable harm—NEPA violation or not."). Nor does the violation of NEPA on its own constitute an irreparable injury. *See Earth Island Inst. v. U.S. Forest Serv.*, 351 F.3d 1291, 1299 (9th Cir. 2003) ("[T]he Supreme Court has held that insufficient evaluation of environmental impact under NEPA does not create a presumption of irreparable injury."); *see also Save Our Sonoran, Inc. v. Flowers*, 408 F.3d 1113, 1124 (9th Cir. 2005) ("[T]here is no presumption of irreparable harm in procedural violations of environmental statutes.").

In most cases where NEPA violations occur, the projects at issue necessarily involve actions with at least semi-permanent consequences. The effects of such actions are ongoing and not easily unwound, which means that it is easy for plaintiffs in those cases to establish irreparable harm. For example, courts have found there to be irreparable harm in NEPA cases involving logging, major construction, and oil drilling. *See, e.g.*, *W. Watershed Project v. Schneider*, 417 F. Supp. 3d 1319, 1334 (D. Idaho 2019) (discussing harms caused by "approving oil and gas leases; drilling permits; rights-of-way for roads, pipelines, and powerlines; coal and phosphate

6

1  mining approvals; and livestock grazing permit renewals"); *League of Wilderness
2  Def./Blue Mountain Diversity Project*, No. 3:12-cv-02271-HZ, 2014 WL 12792263, at *2
3  (D. Or. Aug. 7, 2014) (irreparable harm associated with logging); *Idaho Rivers United*
4  *v. Probert*, No. 3:16-cv-00102-CWD, 2016 WL 2757690 (D. Idaho May 12, 2016)
5  (irreparable harm associated with logging and the associated construction of roads
6  and helicopter landings).

   Here, the project in question relates exclusively to Defendants' management of the herd size of the wild horses in Devil's Garden Plateau Wild Horse Territory.  This places this case on a different factual footing than other NEPA cases as, due to the rapid reproduction of Wild Horses, any harm that may be suffered by reductions in herd size is not necessarily irreparable.  This stands in contrast to other projects where the resulting environmental impacts of an action cannot be undone in short order, if ever.[3]  Thus, the Court presently lacks the factual basis for a finding of irreparable harm.

   The Court notes that this finding is highly dependent on the factual record as it currently exists.  The irreparable harm analysis would change if, as Plaintiffs suggest, Defendants have incorrectly assessed the number of wild horses in the Devil's Garden Plateau Wild Horse Territory by a large margin.  In this circumstance, permitting a removal that would decimate the wild horse population in the Territory would very likely result in irreparable harm.  The Court also appreciates that the underlying NEPA violation, as well as the ground survey, has introduced more uncertainty into the horse population that might otherwise be the case.   Thus, should new facts indicate a possibility of irreparable harm in the future, the Court may be called to revisit this

---

[3] The evidence before the Court does establish that there are other environmental effects associated with the herd sizes of wild horses in the Devil's Garden Plateau Wild Horse Territory.  However, these are negative environmental effects associated with <u>larger</u> herd sizes.  Thus, this case is unlike most NEPA cases, as many of the related environmental effects of the project, beyond the effect on the wild horses population itself, are seemingly positive.

7

determination that there is no irreparable injury. However, the facts presently before the Court simply do not establish that Plaintiffs will suffer irreparable harm.

Plaintiffs also argue that they suffer irreparable harm in any injury to the horses resulting from the present gather. (Reply at 24.) Assuming without deciding that Plaintiffs can state irreparable harm based on injuries suffered by the horses, the evidence before the Court does not indicate that there is a likelihood that the horses are likely to suffer meaningful injury. While Plaintiffs state that some of the wild horses have died or been injured as a result of the gather, at the hearing on this motion, Defendants provided uncontested representations that the only deaths had been six horses euthanized for injuries that predated the gather. And Plaintiffs' concerns about the effects on social cohesion after the horses are returned are also unpersuasive, given that this harm would not be remedied by the Court ordering the horses released as Plaintiffs have requested.

In their Response to Defendants' Status Report, Plaintiffs also note the potential harm that can occur from keeping the horses in corrals for a long period of time. Specifically, Plaintiffs note that 12% of horses held in corrals will die within six months of capture. (ECF No. 22 ¶ 3 n.1.) Given the relatively short time the horses from the most recent gather have been held at the time of this Order, this is not yet a concern. Plaintiffs' contention that there is irreparable harm through their present ability to view the wild horses in the Territory while they are in their present, gathered state is similarly unpersuasive, as the horses have been held for a comparatively short period of time, and the gather is necessary to effectuate removal. Plaintiffs have not established irreparable harm for the current period of the lapse in funding. However, extended holding of the wild horses in the corrals could theoretically serve as a basis for a finding of irreparable harm if an extended lapse in funding were to last a significant amount of time. As noted above, the Court's determination here is subject to reevaluation in the presence of meaningful new information.

In sum, Plaintiffs have failed to establish irreparable harm supporting the issuance of a preliminary injunction.  Out of an abundance of caution, the Court will reaffirm its prior order that Defendants promptly provide both the raw count from the aerial survey[4] and the statistician's calculation of the horse population to the Court and opposing counsel when each is obtained. a The Court will further order that Defendants provide 48 hours' notice to the Court and opposing counsel prior to any removal operations.  These measures will ensure that, should the information from the aerial survey suggest that there is an issue with the horse population in the Territory, the Court and parties will be able to properly address that issue before any irreparable harm occurs.

**III. Balance of Equities and Public Interest**

Where a party seeks preliminary injunctive relief against the Government, the balance of equities and public interest factors merge.  *Nken v. Holder*, 556 U.S. 418, 435–36 (2009).  The balance of equities here still tips in Defendants' favor.  On one hand, the equities and public interest favor government agencies complying with environmental rules and regulations.  On the other hand, the public has an interest in both maintaining control of the wild horse population and the efficient usage of government funds.  There remains a dispute between the parties as to the actual herd in the Devil's Garden Plateau Wild Horse Territory, but as noted, this dispute will be resolved once the aerial survey is conducted.  Absent later evidence that the herd size will be decimated by the removal, cancellation of the removal at this stage would only serve to waste resources.  The balance of equities and the public interest thus does not favor cancellation of the planned removal at this time.

---

[4] In their Response to Defendants' Status Report, Plaintiffs request that the Court order Defendants to provide much more granular information about the aerial count.  This is unnecessary to satisfy the Court's concerns.  It is sufficient for Defendants to provide the total raw number of horses counted in the aerial survey and the statistical count when both are available.

**CONCLUSION**

In light of the above, Plaintiffs have not met their burden to show that issuance of a preliminary injunction is warranted. See Winter, 555 U.S. at 20. Accordingly, Plaintiffs' Motion for Preliminary Injunction (ECF No. 4) is DENIED.

When the aerial survey occurs, Defendants are directed to provide both the raw number of horses observed and the statistician's calculation of the horse population to the Court and opposing counsel, as each becomes available. Defendants are further ordered to provide at least 48 hours' notice of any removal operations to the Court and opposing counsel.

IT IS SO ORDERED.

Dated:  **October 22, 2025**

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE