UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BONNIE KOHLERITER, et al., | No. 2:25-cv-02446-DJC-JDP |
| Plaintiffs, | |
| v. | ORDER |
| UNITED STATES DEPARTMENT OF AGRICULTURE, et al., | |
| Defendants. | |

Plaintiffs have filed a Renewed Motion for Temporary Restraining Order in this action. Plaintiffs' Motion is largely based on information provided by Defendants that 74 horses gathered from Devil's Garden Plateau Wild Horse Territory had been gelded. Plaintiffs contend that this action runs contrary to representations made by Defendants' Counsel to the Court during the hearing on Plaintiffs' prior Motion for Preliminary Injunction.

For the reasons stated below, Plaintiff's Motion (ECF No. 29) is denied.

**BACKGROUND**

The Court has previously summarized the factual background of this action. (ECF No. 12 at 2–3; ECF No. 24 at 2–3.) As such, it is not necessary to do so again here. Since the Court's prior order denying Plaintiff's Motion for Preliminary

Injunction, the lapse in funding that was ongoing when that order was issued has ended. Just prior to the issuance of this Order, Defendants filed a status report informing the Court and parties that the previously postponed aerial survey had been completed. (ECF No. 35.) More relevant to the present Motion, on November 25, 2025, Defendants informed Plaintiffs that, following the Court's order denying Plaintiffs' Motion for Preliminary Injunction, 74 horses previously gathered were gelded. (Mot. (ECF No. 29) at 6.) Defendants' Counsel represents that this occurred due to a miscommunication: Defendants' Counsel had communicated the Court's order to United States Forest Service staff, who believed that communication to mean they should proceed with castration of stallions in the gather. (Opp'n (ECF No. 31) at 3.) Plaintiffs argue that these geldings violated representations made by Defendants to the Court and Plaintiffs.

## LEGAL STANDARD

The standards for issuing a temporary restraining order and a preliminary injunction are "substantially" similar. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.,* 240 F.3d 832, 839 n.7 (9th Cir. 2001). To obtain preliminary injunctive relief, Plaintiff must show (1) likelihood of success on the merits; (2) likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of the equities tips in his favor; and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 20 (2008).

## DISCUSSION

**I. Likelihood of Success on the Merits**

As the Court has discussed in its prior two orders, Defendants acted for years without a valid NEPA document that addresses the removal of wild horses from the Devil's Garden Plateau Wild Horse Territory. (*See* ECF No. 12 at 4–7; ECF No. 24 at 4–5.) This discussion need not be repeated again here. Based on the fact that Defendants lacked a valid NEPA document supporting any actions related to the wild horse population in Devil's Garden Plateau Wild Horse Territory, Plaintiffs have a

strong likelihood of success on their claim that Defendants violated NEPA. These findings are functionally identical to the Court's prior determinations, though the exact action at issue differs in each order (*i.e.*, the gather, removal, or gelding). Understanding that Plaintiffs have a likelihood of success on the merits, the issue, as it was in the prior motions, is Plaintiffs' ability to show irreparable harm and that the balance of equities tips in their favor.

## II. Irreparable Harm

The Court's analysis of irreparable injury remains the same as in its prior orders. Plaintiffs have not shown that they are likely to suffer irreparable harm in the absence of preliminary injunctive relief. The gelding of these horses alone does not create an irreparable harm; Plaintiffs suffer no cognizable injury from the inability of certain horses to procreate. Moreover, the geldings that prompted Plaintiffs' Motion resulted from, per Defendants' Counsel's representation, an error in communication. (Opp'n at 3.) There is no indication that it is likely to occur again.

Certainly, as the Court has previously recognized, actions that would destroy the wild horse population in the Devil's Garden Plateau Wild Horse Territory could constitute an irreparable injury to Plaintiffs. This destruction could occur through the excessive removal of horses from the Territory, as addressed in prior orders. It also could occur through over-sterilization, which, while less direct than removal, could similarly cause the collapse of the wild horse population.[1] However, Plaintiffs have not presented evidence from which the Court can find that this is a present risk. As such, the Court cannot find that there is currently a risk of irreparable harm.

As the Court noted in its prior order, this is a finding that is bound to the facts currently in the record. As such, the Court's determination that Plaintiffs have not

---

[1] Indeed, the castration of 74 horses may be relevant information as to whether a removal would cause substantial damage to the wild horse population, even if such removal would leave the herd size within the new 2025 AML. If the reduction in the ability of the herd to procreate, and thus continue to exist, is meaningfully hindered as a result of the substantial castration of the remaining herd, Plaintiffs may be able to establish irreparable harm from the removal of uncastrated males. However, the Court has no such evidence at this time.

shown an irreparable injury is susceptible to new information that may adjust this analysis.  Most importantly, the results of the statistical analysis of the recent aerial survey will provide more concrete and current information about the status of the wild horse herd in the Devil's Garden Plateau Wild Horse Territory.

Plaintiffs also argue that the gelding of the gathered horses violates the Court's prior orders.  It does not.  The Court did not order that Defendants abstain from using any sterilization on the gathered horses.[2]  The Court does expect parties and their counsel to abide by all of their representations to each other and the Court, regardless of whether they are relied on by the Court.  But the Court is also cognizant that errors sometimes result in communications between attorneys and their clients.  Regardless, Defendants' actions in gelding these horses did not violate any order of this Court.

### III. Balance of Equities/Public Interest

Where a party seeks preliminary injunctive relief against the Government, the balance of equities and public interest factors merge.  *Nken v. Holder*, 556 U.S. 418, 435–36 (2009).  As with the prior orders, the balance of equities here still tips in Defendants' favor.  While the equities and public interest favor government agencies complying with environmental rules and regulations, with the information presently before the Court, this is outweighed by the public's interest in both maintaining control of the wild horse population and the efficient usage of government funds.  There still remains an unresolved dispute about the actual herd in the Devil's Garden

---

[2] Plaintiffs' Reply mentions for the first time that two horses that were part of the gather have already been adopted.  (Reply (ECF No. 34) at 4; Leigh Decl. (ECF No. 34-2) ¶ 4.)  The information on this point in the Reply and accompanying declarations is limited.  Defendants' subsequent status report on the results of the aerial survey does not address the statement in Plaintiffs' Reply, but states that "[t]he horses gathered from the WHT in the fall of 2025 continue to be held in the Double Devil corrals, and none of them have been adopted." (ECF No. 35-1 ¶ 10.)  Given the Court's prior order that no removal efforts were to occur without Defendants first giving 48-hours' notice to the Court and parties, Defendants are ordered to provide a status report regarding the alleged adoption of two horses from the Devil's Garden Plateau Wild Horse Territory and confirm whether any adoptions have occurred.

Plateau Wild Horse Territory. Resolution of that dispute may alter the balance of equities. However, as it exists currently, that balance weighs against Plaintiffs.

## CONCLUSION

In light of the above, Plaintiffs have not met their burden to show that issuance of a preliminary injunction is warranted. *See Winter,* 555 U.S. at 20. Accordingly, Plaintiffs' Motion for Preliminary Injunction (ECF No. 4) is DENIED.

This Order does not alter any of the Court's prior orders. On or before December 11, 2025, Defendants are also ordered to provide a status report informing the Court as to whether any of the horses gathered from the Devil's Garden Plateau Wild Horse Territory have already been adopted. On or before December 13, 2025, Plaintiffs may provide a response to that status report, which shall be limited only to those issues directly raised in Defendants' status report.

IT IS SO ORDERED.

Dated: **December 8, 2025**

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE